| | | |
|---|---|---|
| JAMES LOUIS RODEN SR.,<br>*Plaintiff,*<br><br>v.<br><br>ELAINE MICHELLE REAMER, and<br>COUNTY OF GUADALUPE, TEXAS<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:26-cv-00081-XR |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
ELAINE REAMER'S RULE 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE:

Plaintiff James Louis Roden Sr., appearing pro se, respectfully submits this Response in Opposition to Defendant Elaine Reamer's Rule 12(b)(6) Motion to Dismiss (Dkt. 14). The motion should be denied. Accepting the well-pleaded allegations of the First Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Reamer obtained Plaintiff's first-degree felony arrest with a warrant affidavit that was both facially insufficient under Malley and materially misleading under Franks—defeating qualified immunity at the pleading stage.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This case arises from the nearly eight-month felony restraint of Plaintiff—a seventy-eight-year-old disabled United States Army veteran—on a first-degree felony witness-tampering charge under Texas Penal Code § 36.05. The charge was ultimately declined. (Compl. ¶¶ 1, 19.) Plaintiff did not commit the conduct alleged. As the Complaint pleads, his role was limited and noncriminal: he transported his disabled daughter to court and supported his disabled family members, had

1

almost no contact with Cody Koelle—only two short personal calls over the entire charged period, as phone records would show—and never threatened, coerced, or pressured him, nor asked him to provide false testimony. (Compl. ¶¶ 2, 68.) The arguments below establish that, even setting that denial aside and accepting the affidavit on its own terms, the affidavit fails as a matter of law; Plaintiff advances those arguments without conceding any of the affidavit's accusations, which he denies.

Reamer's motion rests on a single premise: that she "faithfully conveyed" the allegations contained in "signed, sworn and notarized affidavits" that "directly accused Plaintiff," and is therefore protected by Freeman v. County of Bexar and the independent-intermediary doctrine. (Mot. ¶¶ 18–22.) That premise is contradicted by the very documents Reamer attached to her own motion.

The Complaint pleads, and Reamer's own Exhibit 1 confirms, three independent grounds for denial. First, under Malley v. Briggs, the affidavit is facially insufficient: it alleges no statutory means of witness tampering and fails to plead the required elements of § 36.05. Second, under Franks v. Delaware, the affidavit is materially misleading: it attributes to Plaintiff, by name, threats that the sworn affidavits do not contain and that trace only to an unnotarized petition filed against a different person and to unsourced hearsay relayed by the County Attorney's Office. Third, the independent-intermediary doctrine does not apply because the magistrate saw only the facts Reamer chose to present. Each ground independently defeats qualified immunity at the pleading stage, and each is supported by specific, well-pleaded factual allegations—not labels or conclusions.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. A pro se complaint is held to less stringent standards and must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Where a defendant asserts qualified immunity, the plaintiff must plead facts showing (1) the violation of a constitutional right and (2) that the right was clearly established. In the warrant context, both Malley and Franks operate as recognized exceptions to the independent-intermediary doctrine. Melton v. Phillips, 875 F.3d 256, 261–64 (5th Cir. 2017) (en banc); Wilson v. Stroman, 33 F.4th 202, 208 (5th Cir. 2022). At the pleading stage, the plaintiff need not prove these elements; he need only allege facts that, taken as true, plausibly establish them. The Court may consider the warrant affidavit and the exhibits attached to the Complaint and to the motion, but on a Rule 12 motion those documents are construed in the plaintiff's favor, not the movant's.

## III. REAMER'S CENTRAL PREMISE—THAT SHE "FAITHFULLY CONVEYED" SWORN AFFIDAVITS THAT "ACCUSED PLAINTIFF"—IS REFUTED BY HER OWN EXHIBIT 1

Reamer's motion repeatedly asserts that she relied on "signed, sworn and notarized affidavits" that "directly accused Plaintiff" of witness tampering. (Mot. ¶¶ 18, 22.) The Complaint alleges, and Reamer's own Exhibit 1 demonstrates, that this is not so. Neither sworn affidavit names James Louis Roden Sr. or contains the threats Reamer charged him with: Cody's refers only to "my grandfather on Jamie's side" and alleges at most that the family was "contacting us repeatedly to sign" a statement, and Andrea's attributes a generalized fear of CPS retaliation to "Jamie's family" as a whole. (Compl. ¶¶ 30–31.) The "$40,000" / "cracking hard" threat on which

the warrant depends appears only in the March 4, 2025 Kansas protective-order petition—filed by Cody against Jamie, not Plaintiff, naming only an undefined "they" and a generic "granddad." (Compl. ¶¶ 32–33.) Because Reamer attributed to Plaintiff, by name, accusations that her own sworn documents do not make, her "faithful conveyance" premise collapses, and with it the Freeman and independent-intermediary defenses built upon it. The sections below establish each ground for denial in turn.

### IV. THE AFFIDAVIT IS FACIALLY INSUFFICIENT UNDER MALLEY

Under Malley v. Briggs, 475 U.S. 335, 345 (1986), an officer who submits a warrant affidavit "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" is not entitled to qualified immunity. As Reamer's own motion concedes, a Malley claim does not depend on a false statement; it asks whether the affidavit's allegations, taken as true, establish probable cause. (Mot. ¶ 16.) Here they do not. The Complaint pleads an element-by-element failure under § 36.05. (Compl. ¶¶ 36–43.)

The offense requires that the accused, with intent to influence a witness or prospective witness in an official proceeding, coerce that witness or confer a benefit, in order to procure false testimony or one of the other enumerated results. Tex. Penal Code § 36.05(a). The affidavit alleges none of these elements with supporting facts. It identifies no communication by Plaintiff—no call, text, email, voicemail, letter, or visit, and no date, time, place, or words attributable to Plaintiff. (Compl. ¶ 37.) It alleges no benefit conferred and no coercive act; a generalized, unverified reference to a possible CPS report—particularly where genuine child-safety concerns existed in the record—is not, without more, unlawful coercion. (Compl. ¶ 38.) It does not identify what false testimony Plaintiff supposedly sought to procure. (Compl. ¶ 39.) It does not establish any nexus between Cody's expected testimony and an official proceeding; invoking the words "Aggravated

Sexual Assault" is not a substitute for facts. (Compl. ¶ 40.) It does not establish venue: Plaintiff lived in League City, Cody lived in Kansas, and the affidavit alleges no act, communication, or presence in Guadalupe County. (Compl. ¶ 42.) And it pleads no facts supporting the first-degree felony enhancement—no act of family violence by Plaintiff and no threat of violence against Cody. (Compl. ¶ 43.)

Critically, even if the affidavit's allegations were credited—which Plaintiff disputes— asking a person to sign an affidavit, or contacting him to do so, is not witness tampering. It is neither coercion nor a benefit, and it carries no intent to procure false testimony. A request that a witness provide or sign a statement is constitutionally protected, lawful conduct; it does not become a first-degree felony because the requester is related to a party. The affidavit's core factual assertion—that the family was "contacting" Cody "to sign" affidavits—therefore states no offense at all, and the affidavit identifies no act by Plaintiff beyond it. No reasonably well-trained officer with Reamer's asserted training and experience could have believed this affidavit established probable cause for first-degree felony witness tampering. (Compl. ¶¶ 99, 101.)

This conclusion is reinforced by the affidavit's own timeline. The conduct charged spans November 2024 to March 2025, but every document Reamer relied upon predates Cody's March 18, 2025 subpoena. (Compl. ¶¶ 34, 41, 44.) The affidavit alleges no facts showing that Cody was a "witness or prospective witness in an official proceeding" during the charged window, or that Plaintiff knew he would be. A facially sufficient § 36.05 affidavit must connect the accused's conduct to a witness's role in an official proceeding; this one does not.

### V. THE AFFIDAVIT IS MATERIALLY MISLEADING UNDER FRANKS — A DOCUMENT-BY-DOCUMENT EXAMINATION OF REAMER'S OWN EXHIBIT 1

Independent of Malley, the Complaint pleads a Franks violation. Under Franks v. Delaware, 438 U.S. 154 (1978), a warrant is invalid where the affiant included material false

statements or omitted material facts, knowingly or with reckless disregard for the truth, and the corrected affidavit would not establish probable cause. The Fifth Circuit has repeatedly held that material misstatements and omissions in warrant materials can constitute a clearly established Fourth Amendment violation. Hughes v. Garcia, 100 F.4th 611, 620–22 (5th Cir. 2024); Winfrey v. Rogers, 901 F.3d 483, 494–96 (5th Cir. 2018); Terwilliger v. Reyna, 4 F.4th 270, 279–83 (5th Cir. 2021).

Because Reamer attached the underlying documents to her own motion as Exhibit 1, the Court can see for itself what those documents say. They do not say what the affidavit represents. Examined one by one, each source Reamer relied upon fails to supply the accusation she swore to.

**A. Neither the Cody nor the Andrea affidavit names Plaintiff or accuses him of a threat.**

Cody's affidavit—which Reamer characterizes as a statement that "directly accused Plaintiff" (Mot. ¶¶ 18, 22)—does nothing of the kind. Its sole reference to Plaintiff is that the family was "contacting us repeatedly to sign the statement that they drafted themselves." That is the entire accusation: that the family asked Cody to sign a statement. It does not name James Louis Roden Sr.; it does not allege he demanded $40,000, threatened to "crack down," threatened to call Child Protective Services, or threatened any harm; and it identifies no date, no communication, and no testimony Plaintiff sought to influence. Asking a witness to sign a statement is not witness tampering under Texas Penal Code § 36.05, which requires a benefit, threat, or coercion. The "$40,000" threat Reamer attributed to this affidavit appears nowhere in it, making her representation that it "directly accused Plaintiff" materially misleading. (Compl. ¶¶ 30, 32, 46.) Andrea's affidavit adds nothing: it expresses a generalized fear that "Jamie's family" might "call CPS," framed as her own apprehension, names no statement by Plaintiff, and identifies no

connection to testimony in any proceeding—and Reamer never interviewed her or corroborated the fear. (Compl. ¶¶ 31, 47.)

**B. The March 4 petition is an unadjudicated application against Jamie that names only "granddad" and relays the alleged threat through an undefined "they."**

The only document containing the "$40,000" / "cracking hard" language is the March 4, 2025 Kansas filing—and on inspection it supports none of the warrant's conclusions. First, it is not an affidavit; it is a Petition for Protection. By the terms of Reamer's own motion, it bears "a verification page with a signature," not a notarization. (Mot. ¶ 2.) Reamer's reference to "the affidavit written by Cody" thus mischaracterized the very nature of the source. (Compl. ¶¶ 32, 46.) Second, it is an application only. It sought a protective order; it does not reflect any order that was approved, issued, produced, or served on Plaintiff or anyone else. An unadjudicated request for relief is not evidence that the events it describes occurred, much less probable cause that Plaintiff committed a felony.

Third, the petition was filed by Cody against Jamie Walker—not against Plaintiff. (Compl. ¶ 32.) The dispute it describes is between Cody and his mother. Fourth, it does not name Plaintiff. It uses the term "granddad," and even then it does not state that "granddad" spoke to Cody directly. Its words are: "This week at 12:32pm when they called and texted me asking me to write a letter lieing . . . and having are granddad threaten us by saying if he looses 40,000$ he going to come done cracking hard." (Compl. ¶ 32.) Grammatically, the threat is relayed: an undefined "they" "called and texed," and within that communication there is a reference to "granddad." The petition does not say that Plaintiff called Cody, that Plaintiff said these words to Cody, or that Cody heard them from Plaintiff. It does not identify who "they" are. The statement is therefore at least double-

removed: Cody, relaying what "they" communicated, about what "granddad" supposedly said. (Compl. ¶¶ 32, 48.)

Fifth, the phrase itself is unintelligible as a witness-tampering threat. The affidavit nowhere explains what "if he looses 40,000$ he going to come done cracking hard" means, who would lose $40,000, how it connects to any testimony, or what false testimony it sought to procure. (Compl. ¶¶ 32–33, 39.) The $40,000 reference has no apparent connection to Jamie Walker's bond hearing or to the underlying aggravated-sexual-assault case. (Compl. ¶ 33.) A vague, unexplained phrase relayed through unidentified intermediaries is not a coercive communication "to influence a witness . . . to testify falsely." Tex. Penal Code § 36.05(a).

**C. No one in the chain authenticated the documents, the stream originated with the defendant's own attorneys, and the affidavit's own format shows Cody did not draft it.**

Compounding these defects, the Complaint pleads that Reamer authenticated none of it. She did not personally interview Cody, did not watch him sign any affidavit, did not obtain authentication from the notary, did not verify the documents' origin, and did not confirm that Cody adopted the statements attributed to him. (Compl. ¶ 54.) By the affidavit's own terms, the materials reached Reamer through a multi-step adversarial channel: they originated with "Michael Walker's attorneys," passed to the Guadalupe County Attorney's Office, then to Reamer, then to the magistrate. (Compl. ¶¶ 26, 28.) Michael Walker—whose attorneys originated the stream—was the criminal defendant whose exposure would be reduced if the disabled victim's advocates were discredited. (Compl. ¶ 28.) No one in that chain is alleged to have witnessed Cody write, sign, or transmit any document, and the affidavit reflects no verification that Cody authored or sent anything. (Compl. ¶ 54.)

The format of the document Reamer called "the affidavit written by Cody" confirms that Cody did not write it: it was prepared court-ready, in a third party's drafting style, for Cody merely to sign—consistent with the Complaint's allegation that the statements were drafted by others and that Reamer never confirmed Cody authored or adopted them. (Compl. ¶ 54.) The one person who could authenticate the document later disavowed it under oath in court.

**D. The affidavit Reamer relied on recants Cody's own prior sworn statement and falsely denies signing it—a contradiction apparent on the face of the record.**

The January 31, 2025 affidavit Reamer relied upon—which Defendant attached to her motion as Exhibit 1—does not merely lack corroboration; it recants Cody's own prior sworn testimony and contains a statement contradicted by the record. Plaintiff pleads that Cody had signed an affidavit in November 2024 supporting Jamie Walker, not Michael Walker. (Compl. ¶ 2.) That November 15, 2024 affidavit is attached as Exhibit A, and three independent grounds place it squarely before the Court. First, Reamer's own warrant makes the affidavits the subject matter of the charged offense: it recites that the County Attorney's Office advised Reamer that Cody said Plaintiff threatened to call Child Protective Services and have his children removed "if he did not side with Jamie and sign the affidavits that had been sent to them." (Warrant.) The first-degree felony thus rests entirely on an alleged threat to coerce Cody to sign "the affidavits"—so Reamer necessarily put the affidavits, and their contents, at the center of the case, and could not have charged a coercion-to-sign without knowing what those affidavits were. Second, the affidavit is expressly identified and quoted by the very affidavit Reamer attached to her own motion as Exhibit 1, which refers to it as "the affidavit" Cody purportedly refused to sign and recites its content ("punch, kick and beat my mother, as the affidavit says"). A movant who attaches a document quoting and refuting a prior affidavit cannot exclude that prior affidavit

9

from the Court's view. Third, the Complaint independently references the November 2024 affidavit (Compl. ¶ 2), and it is central to the credibility allegations underlying Counts I through III. Both affidavits bear the jurat of the same notary, Sandra Rodriguez, Notary Public, State of Kansas, confirming that each is a sworn, notarized statement of the same affiant.



That November 15, 2024 affidavit, sworn before notary Sandra Rodriguez, stated that Cody "witnessed Michael punch, kick and beat my mother," that Michael "threatened my life" with a gun, and that Michael was violent and had "a very bad temper." The January 31, 2025 affidavit—sworn before the same notary—reverses each of those statements nearly verbatim: it denies that Cody "saw Michael punch, kick and beat my mother, as the affidavit says," denies the gun threat "it also says," and asserts that Cody "never saw Michael... violent towards anyone at all." The later affidavit's own words—"as the affidavit says" and "it also says"—identify the prior sworn statement it recants. Two affidavits by the same affiant, before the same notary, that cannot both be true.

Critically, the evidence Reamer chose to rely on identified the disputed prior affidavit itself, so Reamer cannot claim ignorance of the central affidavit dispute. The January affidavit does not refer to some unspecified statement; it refers to "the affidavit," quotes its specific contents ("punch, kick and beat my mother, as the affidavit says"), and states Cody "refused to sign it." No date or name is necessary: the recantation identifies its own referent by quoting it, and only one document matches—the prior sworn affidavit Cody signed before the same notary. The very evidence

10

Reamer presented to the magistrate thus disclosed, on its face, that a specific contradictory prior sworn statement existed and was the subject of the charge, and her warrant confirms the stream originated with the attorneys for the man she had charged with serial aggravated sexual assault. (Compl. ¶¶ 28, 46.) An officer on notice that her sole accusatory document was a recantation of a specific, identified prior affidavit—originating with the accused's own defense team—was obligated to obtain that affidavit, evaluate the contradiction, and disclose it to the magistrate. Reamer did none of these. These facts support a plausible inference that the recantation was procured to neutralize a witness statement adverse to Michael Walker and repackaged as a tampering accusation against Plaintiff, and at minimum establish reckless disregard under Franks. (Compl. ¶¶ 46, 53–54.)

Worse, the January affidavit asserts that the family "drafted" the prior affidavit and that Cody "refused to sign it." But the November 15, 2024 affidavit—the document containing those very accusations—bears Cody's signature and Sandra Rodriguez's notarial jurat. A sworn denial of having signed a document that bears the affiant's own notarized signature is contradicted by the record itself. This contradiction strikes at the heart of the charged offense. Reamer charged Plaintiff with coercing Cody to "sign the affidavits"—yet Cody's own January affidavit, on which Reamer relied, states that Cody "refused to sign" them, and the November affidavit shows he had already signed. The warrant's own theory—a threat to compel signing—is thus contradicted by the very documents Reamer used: Cody either signed willingly or refused, but the alleged coercion-to-sign finds no support in either the signed November affidavit or Cody's January denial. The defect is not merely a contradiction between two documents; it is a statement false on the face of the document Reamer relied upon—sworn under penalty of perjury. Cody swore in the January 31 affidavit, under penalty of perjury and before notary Sandra Rodriguez, that he "refused to sign"

11

the affidavit accusing Michael—while the very affidavit he denies signing bears his own signature and the jurat of the same notary, Sandra Rodriguez, with the same commission. A sworn declaration under penalty of perjury that is demonstrably false on the face of the notarized record is, on its face, perjurious; and a witness whose probable-cause statement contains a demonstrable perjury, within the very document offered to establish probable cause, is the paradigm of a source an officer has an "obvious reason to doubt." The absurdity is plain: Reamer rested a first-degree felony arrest on an affidavit that disproves its own affiant's credibility on its face. No reasonable officer could credit—let alone swear a felony warrant upon—a witness whose own notarized statement is contradicted by the notarized record, and an affiant who does so, without disclosing the contradiction to the magistrate, acts with reckless disregard for the truth. See Franks v. Delaware, 438 U.S. 154, 171 (1978); Hughes v. Garcia, 100 F.4th 611, 620–22 (5th Cir. 2024). The point is not for this Court to decide which of Cody's sworn accounts is true; it is that the document Reamer presented to the magistrate as reliable was, on the face of the record, the product of a witness who reverses his own notarized testimony and denies signing what he signed. A reasonable affiant who reviewed the source—as Reamer was obligated to do before swearing to it (Compl. ¶ 54)—would have recognized that such a witness could not supply reasonably trustworthy probable cause, and would have disclosed the contradiction to the magistrate. Reamer disclosed none of it. (Compl. ¶¶ 46, 54.)

**E. Reamer's reliance was reckless for the additional reason that, by her own sworn account, she knew the affidavit vouched for a man she had investigated and charged with aggravated sexual assault.**

Reamer's own warrant affidavit establishes a further, independent basis for recklessness. Reamer swore that, beginning in March 2024, she "began an investigation" into Michael Walker

for Prohibited Sexual Conduct and "drafted warrants for the arrest of Jamie and Michael," who were "indicted on several counts of Aggravated Sexual Assault." (Warrant; Compl. ¶ 5.) Reamer thus had personal, firsthand knowledge that Michael Walker was an indicted serial sexual-assault defendant. Yet the affidavit she relied upon to arrest Plaintiff is devoted to praising Michael— averring that he "has always been good to me" and that the affiant "never saw Michael... violent towards anyone at all"—and to attacking Michael's victim S.J.K, including Plaintiff's family who reported the abuse. That content was itself the credibility signal: a statement vouching for the gentleness of the man Reamer had charged with serial aggravated sexual assault, and attacking the family protecting his victims, gave Reamer affirmative reason to doubt the affiants, not to credit them. Where an officer has "obvious reasons to doubt" the truth of what a source reports, reliance without further inquiry is reckless disregard for the truth. See Franks v. Delaware, 438 U.S. 154, 171 (1978); Hughes v. Garcia, 100 F.4th 611, 620–22 (5th Cir. 2024); Winfrey v. Rogers, 901 F.3d 483, 494–96 (5th Cir. 2018). Reamer presented these partisan accusations to the magistrate as credible while omitting the affiants' obvious bias and motive to retaliate against the family aiding Michael's prosecution—the reckless disregard Franks condemns. (Compl. ¶¶ 28, 46, 53–54.)

**F. Cody's sworn June 18 testimony confirmed that the affidavit foundation was never authentic.**

On June 18, 2025, Cody testified under oath at Jamie Walker's bond hearing—with Assistant County Attorney Jonathan Amdur present and questioning—that he did not write the affidavit and did not sign it. (Compl. ¶¶ 55–56.) He testified that he "did not write an affidavit at all," that his "uncle wrote that," that he did not sign it, and that he "didn't sign any affidavits at all." This sworn testimony confirms what the document's format and the unverified chain of

custody already indicated: the statement Reamer represented as "the affidavit written by Cody" was neither written nor, according to its purported author, signed by him.

This testimony eliminates any remaining foundation for the warrant. As the Complaint pleads, the result is dispositive under either reading: if Cody testified truthfully on June 18, then the materials Reamer used were unauthenticated, misattributed, or false; if Cody testified falsely, then the County's key witness was willing to lie under oath. Under either scenario, his statements could not supply reasonably trustworthy probable cause. (Compl. ¶ 56.) The June 18 testimony also confirmed Cody's documented credibility problems—he acknowledged probation for criminal threat and interference with law enforcement and prior conduct involving impersonating a police officer, unauthorized emergency lights, and false reporting—precisely the credibility concerns of which the County had received written notice before the warrant issued. (Compl. ¶¶ 23, 52, 57.) An affidavit resting entirely on an unauthenticated, defense-routed document that its purported author disavows under oath cannot survive even the deferential probable-cause standard.

**G. The lone allegation that states the charged offense rests entirely on unsourced, multi-level, undated, and unverified hearsay.**

The single allegation that comes closest to naming Plaintiff as the actor—that "the Defendant stated he would call Child Protective Services on him and have his children removed if he did not side with Jamie and sign the affidavits"—is the only statement in the entire affidavit that recites the charged coercive act, including the "have his children removed" language that anchors the first-degree felony. Yet it appears in no document. It is not in Cody's affidavit, not in Andrea's affidavit, and not in the petition. (Compl. ¶¶ 26, 49.) It rests solely on Reamer's own sentence: "I was advised by Guadalupe County Attorney's Office that Cody had told them repeatedly" so.

That single sentence is unreliable on its face for several independent reasons. First, it is not a quotation. Reamer attributes no actual words to Cody or to anyone at the County Attorney's Office; she conveys only her summary of a summary. The affidavit's use of "the Defendant" is therefore Reamer's or the office's characterization, and the Court cannot know whether the underlying statement ever named Plaintiff at all, as opposed to "granddad," "the family," or no one—the same misattribution problem that infects the petition. Second, it is attributed to an institution, not a person: "the Guadalupe County Attorney's Office" advised her, with no identification of who spoke, so neither the magistrate nor this Court can assess that speaker's reliability. Third, the sentence discloses yet another layer: the office was relaying what Cody "had told them"—some other unidentified person or persons—so the statement is at least triple hearsay, with two of its three human links wholly unidentified. Fourth, it is undated. "Repeatedly" is unquantified and untethered to the charged November 2024–March 2025 window and to Cody's status as a witness, which did not arise until his March 18, 2025 subpoena. (Compl. ¶¶ 34, 44.) Fifth, it is undocumented—supported by no writing, recording, log, timestamp, or interview. (Compl. ¶¶ 27, 49.)

Sixth, and critically, Reamer did not verify the one objective, easily-checkable fact at the heart of the allegation. Whether Plaintiff ever actually contacted Child Protective Services about Cody is a binary fact recorded in CPS's own files. Reamer did not say she reviewed CPS records, contacted CPS, or confirmed that any such report existed; the affidavit reflects "no verified CPS call by Plaintiff and no record showing Plaintiff ever contacted CPS about Cody or Andrea." (Compl. ¶¶ 27, 38, 49.) An officer who builds the charged element of a first-degree felony on unsourced, multi-level hearsay, while declining to check the single record that would confirm or refute it, acts with reckless disregard for the truth. Franks, 438 U.S. at 171.

Finally, the allegation is incomplete even on its own terms. It asserts that Plaintiff conditioned the supposed CPS threat on Cody "sid[ing] with Jamie," but it never identifies in what proceeding, on what subject, or to what end—let alone what false testimony Plaintiff allegedly sought to procure. (Compl. ¶¶ 39–40.) Moreover, a reference to a possible CPS report is not automatically unlawful coercion: as the Complaint pleads, genuine child-safety concerns existed in the broader record independent of any statement by Plaintiff, and Reamer alleged no verified CPS contact by him. (Compl. ¶¶ 38, 49.) An accusation that does not identify the testimony to be influenced, and that rests on an unverified reference to lawful reporting conduct, cannot establish probable cause for witness tampering.

**H. The corrected affidavit establishes no probable cause.**

A corrected affidavit—one accurately describing the sources as an unnotarized petition against Jamie and two affidavits that do not name Plaintiff, disclosing that the charged threats appear in none of the sworn documents, that the CPS allegation was County-Attorney double hearsay, that the entire stream originated with the defendant's attorneys, and that Cody lacked firsthand knowledge and had documented credibility problems—would not lead a neutral magistrate to find probable cause. (Compl. ¶¶ 44–52, 103.) Whether Reamer's conduct was knowing or reckless, it satisfies Franks at the pleading stage.

## VI. FREEMAN AND TINOCO DO NOT SHIELD REAMER

Reamer's principal authorities, Freeman v. County of Bexar, 210 F.3d 550 (5th Cir. 2000), and Tinoco v. City of Hidalgo, are inapposite. Those cases hold that an officer may reasonably rely on the exact wording of a witness's sworn statement, even if the affiant later recants, because the officer "could not have predicted" the recantation. (Mot. ¶¶ 19–22.) They protect the accurate relay of a sworn statement that later proves false. They do not protect what the Complaint alleges

here: the affirmative mischaracterization of an unnotarized petition as a "sworn affidavit," the attribution to a named person of a statement the source attributes to "granddad" and an undefined "they," and the presentation of County-Attorney hearsay as a direct accusation. (Compl. ¶¶ 30–32, 46–49.)

The distinction is dispositive. In Freeman and Tinoco, the affidavit faithfully reproduced what the witness swore; the defect arose only later, when the witness changed course. Here, by contrast, the sworn affidavits never contained the charged accusations in the first place. The threats Reamer attributed to Plaintiff are absent from the notarized affidavits and appear, if at all, only in an unnotarized petition against a different person. Reamer therefore did not accurately relay a sworn statement that later proved false; she generated a named, direct accusation that the sworn statements did not make. Freeman does not immunize that conduct, and Tinoco—which turned on the absence of any pleaded facts supporting recklessness—does not control a complaint that pleads, in detail, the specific misstatements and omissions and the reasons each was misleading. (Compl. ¶¶ 44–52, 103.)

To the extent Reamer contends the March 4 petition itself "directly accused Plaintiff," her own motion refutes the point. The petition says "granddad"; Reamer's motion must insert a bracketed "[Plaintiff]" to make the quotation refer to him. (Mot. ¶ 18.) That bracketed substitution is the very misattribution the Complaint alleges. A document that must be edited to name the defendant did not, as written, name him—and cannot supply the "faithfully conveyed" sworn accusation Reamer's defense requires.

## VII. THE INDEPENDENT-INTERMEDIARY DOCTRINE DOES NOT APPLY

Reamer invokes the independent-intermediary doctrine because a magistrate signed the warrant. (Mot. ¶ 15.) But the doctrine is not absolute. It does not insulate an officer who obtains a

warrant through material falsehoods, reckless omissions, or a facially deficient affidavit—precisely the Malley and Franks exceptions the Fifth Circuit recognizes. Melton v. Phillips, 875 F.3d at 261–64; McLin v. Ard, 866 F.3d 682, 689 (5th Cir. 2017). The intermediary's deliberations are not "untainted" where the affiant withheld from the magistrate the facts that defeated probable cause. (Compl. ¶ 102.)

Here, the magistrate saw only what Reamer chose to present. The magistrate was not told that the charged threats appear in no sworn affidavit; that the "$40,000" statement comes from an unnotarized petition against Jamie attributing it to "granddad" through an undefined "they"; that the CPS allegation was unverified hearsay relayed by the County Attorney's Office; that the materials originated with the defendant's own attorneys; that Cody lacked firsthand knowledge and had documented credibility problems of which the County had written notice; or that Plaintiff is a disabled, elderly veteran living 700 miles from Cody. (Compl. ¶¶ 28, 44–52.) Because the magistrate's probable-cause determination rested on a tainted and incomplete affidavit, the doctrine provides Reamer no protection at the pleading stage.

## VIII. THE AUTHORITIES REAMER INVOKES DO NOT ESTABLISH QUALIFIED IMMUNITY ON THESE PLEADED FACTS

Reamer's qualified-immunity argument rests on Freeman v. County of Bexar, Tinoco v. City of Hidalgo, and the independent-intermediary doctrine, framed by the rule that an affidavit need only be "truthful" in the sense that the affiant "believed or appropriately accepted" the information "as true." (Mot. ¶¶ 18–22.) None of these authorities shields her on the facts pleaded, because each is subject to a limiting principle that the Complaint squarely invokes.

**A. Freeman protects accurate relay, not unilateral materiality decisions; Kohler v. Englade controls.**

Freeman held that an officer's reliance on "the exact wording of [witnesses'] sworn statements" is reasonable. That principle assumes the affidavit accurately reproduces what the witness swore. It does not authorize an officer to recharacterize the source—to convert an unnotarized petition into a "sworn affidavit," to attach a named accused to a statement the source attributes to "granddad" through an undefined "they," or to present County-Attorney hearsay as a direct accusation. The Fifth Circuit has drawn precisely this line: "[A] police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." Kohler v. Englade, 470 F.3d 1104, 1113–14 (5th Cir. 2006). Kohler holds that both affirmative misrepresentations in a warrant application and material omissions from it give rise to Fourth Amendment claims, and it vacated judgment for the officer where the affidavit lacked probable cause. The conduct the Complaint pleads—mischaracterizing the documents, supplying the name the documents omit, and withholding the facts that undermined them—is the unilateral materiality decision Kohler forbids, not the faithful relay Freeman protects.

**B. The "believed as true" standard does not protect an affiant with obvious reasons to doubt.**

Reamer's submission that her affidavit was "truthful" because she accepted the information "as true" omits the governing qualification. Under the reckless-disregard standard the Fifth Circuit applies in the Franks context, an affiant acts with reckless disregard for the truth where she had "obvious reasons to doubt the veracity" of the source or "in fact entertained serious doubts as to the truth" of the statement. The Complaint pleads obvious reasons to doubt at every turn: the

19

materials originated with the criminal defendant's own attorneys (Compl. ¶ 28); the County had received written notice, before the warrant, of the source's documented credibility problems, including false statements to law enforcement and impersonation of a police officer (Compl. ¶¶ 23, 52); the source lacked firsthand knowledge and had said so in a recorded call (Compl. ¶¶ 35, 51); the charged threats appeared in no sworn document; and no one had authenticated the source's authorship or signature (Compl. ¶ 54). An officer who proceeds on an uncorroborated, adversarially-sourced accusation in the face of those red flags is not protected by a subjective belief in its truth. Indeed, an uncorroborated or anonymous tip, standing alone, is rarely sufficient to establish probable cause. Illinois v. Gates, 462 U.S. 213, 227 (1983); Kohler, 470 F.3d at 1109–11.

**C. Tinoco is distinguishable; the Complaint pleads the recklessness facts Tinoco found absent.**

Reamer's reliance on Tinoco, an unpublished district-court decision, is misplaced. Tinoco dismissed a witness-tampering Franks claim because the plaintiff there failed to plead facts showing the affiant acted with intentional or reckless disregard for the truth. This Complaint is the opposite. It identifies, document by document, what each source actually said; it shows the charged threats appear in none of the sworn materials; it pleads the defense-attorney origin of the stream, the source's documented credibility problems known to the County, the absence of any authentication, the source's lack of firsthand knowledge, and the omission of Plaintiff's disability and the implausibility of the alleged cross-country threat. (Compl. ¶¶ 28, 30–52, 54, 103.) Where Tinoco lacked pleaded recklessness facts, this Complaint supplies them in detail, which is all Rule 8 requires. Hughes v. Garcia, 100 F.4th 611, 620–22 (5th Cir. 2024); Winfrey v. Rogers, 901 F.3d 483, 494–96 (5th Cir. 2018); Terwilliger v. Reyna, 4 F.4th 270, 279–83 (5th Cir. 2021).

**D. Carswell requires the Court to rule now—and on these pleaded facts, qualified immunity is denied, not granted.**

Reamer correctly notes that under Carswell v. Camp the Court "may not defer ruling" on qualified immunity at the pleading stage. (Mot. ¶ 13.) That cuts against her. Carswell forbids postponement; it does not dictate the result. The question is whether, accepting the Complaint's well-pleaded facts as true and drawing all inferences in Plaintiff's favor, those facts plausibly establish a clearly established violation. They do. Before April 2025, Franks, Malley, Winfrey, Terwilliger, Hughes, and Kohler clearly established that an officer may not obtain a warrant through material misrepresentations, reckless omissions, unauthenticated and uncorroborated accusations from an interested source, or an affidavit so deficient that no reasonable officer would submit it. (Compl. ¶¶ 53, 104.) Ruling now, the Court should hold that Plaintiff has pleaded a violation of clearly established law and deny qualified immunity.

**IX. COUNT II STATES A CLAIM FOR SEIZURE THROUGH LEGAL PROCESS**

Count II alleges that Reamer caused Plaintiff's continuing seizure through legal process by submitting the defective affidavit, after which Plaintiff remained under felony bond restrictions for months without probable cause, indictment, or meaningful review. (Compl. ¶¶ 106–110.) Under Manuel v. City of Joliet, 580 U.S. 357 (2017), the Fourth Amendment governs pretrial restraint that follows legal process unsupported by probable cause. Under Thompson v. Clark, 596 U.S. 36 (2022), favorable termination requires only that the prosecution end without a conviction; Plaintiff's charge was declined without indictment, plea, or admission. (Compl. ¶¶ 19, 108.) For the reasons stated in Parts IV–VII, the affidavit did not establish probable cause; the continuing seizure it caused is therefore actionable. To the extent Reamer did not control later prosecutorial

decisions, Count II rests on the continuing seizure caused by her original affidavit and the failure to correct the record once its foundation collapsed. (Compl. ¶ 110.)

Independently, Count II survives because Reamer's motion does not address it. The motion is directed at the false-arrest and First Amendment theories; it nowhere engages Count II's distinct continuing-seizure theory and does not cite Manuel, Thompson, or the governing favorable-termination framework. A movant bears the Rule 12 burden, and a motion that fails to address a separately pleaded claim has not carried it. While Reamer's probable-cause arguments overlap one element of Count II, its continuing-seizure dimension—the months of Fourth Amendment restraint following the defective process and her failure to correct the record after its foundation collapsed (Compl. ¶¶ 107–110)—is distinct and unaddressed. Count II should not be dismissed.

### X. COUNT III STATES A CLAIM FOR FIRST AMENDMENT RETALIATION

Reamer argues that probable cause defeats the retaliation claim under Nieves v. Bartlett. (Mot. ¶¶ 23–24.) That argument fails for the threshold reason that, as pleaded, there was no probable cause. (Compl. ¶ 116.) Nieves does not bar a retaliatory-arrest claim where the arrest lacked probable cause. The Complaint plausibly alleges each element: Plaintiff and his family engaged in protected activity—petitioning, court participation, mandated reporting, and disability advocacy, including the March 21 complaint to Judge Steel and the April 1 mandated report concerning S.J.K.'s safety; the April 7 first-degree felony warrant was an adverse action that would chill a person of ordinary firmness; and the timing—six days after the protected April 1 report—together with the defense-routed source of the accusations and the absence of probable cause, supports a plausible causal connection. (Compl. ¶¶ 113–115.)

In the alternative, the Complaint pleads the objective comparative showing recognized in Gonzalez v. Trevino, 602 U.S. 653 (2024): the County deployed an extraordinary first-degree

felony arrest process against Plaintiff in circumstances where no reasonably comparable prosecution would ordinarily occur, while crediting and facilitating the defense-aligned accusations of Cody and Andrea. (Compl. ¶ 116.) At the pleading stage, these allegations are sufficient to proceed.

## XI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant Reamer's Rule 12(b)(6) Motion to Dismiss in its entirety. The First Amended Complaint pleads specific, well-supported facts—confirmed by the very exhibits Reamer attached to her motion—that plausibly establish a facially insufficient affidavit under Malley and a materially misleading affidavit under Franks, defeating qualified immunity at this stage. Should the Court find any portion of the Complaint deficient, Plaintiff respectfully requests that any dismissal be without prejudice.

Respectfully submitted,

/s/ James Louis Roden Sr.
James Louis Roden Sr.
Plaintiff, Pro Se
1555 Tahoe Ct.
League City, TX 77573
(417) 593-1714
jrodensr@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 28th, 2026, a true and correct copy of the foregoing was served on counsel for Defendants via the Court's CM/ECF system and/or by email and U.S. mail in accordance with the Federal Rules of Civil Procedure.

/s/ James Louis Roden Sr.
James Louis Roden Sr.