IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES LOUIS RODEN SR., *Plaintiff,* | § § § § | |
| v. | § § | Case No. 5:26-cv-00081-XR |
| ELAINE MICHELLE REAMER, and COUNTY OF GUADALUPE, TEXAS *Defendants.* | § § § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
GUADALUPE COUNTY'S RULE 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE:

Plaintiff James Louis Roden Sr., pro se, respectfully files this Response in Opposition to Defendant Guadalupe County's Rule 12(b)(6) Motion to Dismiss, and would show the Court as follows:

## I.        INTRODUCTION

Guadalupe County's motion does not engage the claims Plaintiff actually pleaded. As to Plaintiff's disability claims, the County argues that he "concedes" he eventually received a remote setting and that he did not engage in protected activity—ignoring that Plaintiff pleads a denial of meaningful access through months of unreasonable delay (Count 4) and retaliation for his disability advocacy on behalf of two disabled family members (Count 5). As to Monell, the County answers only a pattern theory and argues the related warrants "arise from the same investigation"— never addressing Plaintiff's pleaded final-policymaker route, his specifically pleaded sheriff-side custom, or his pleaded failure-to-correct allegations. Because the motion attacks claims Plaintiff

did not plead and ignores the bases on which his claims actually rest, it should be denied. The Court accepts Plaintiff's well-pleaded facts as true and construes his pro se pleading liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

One further matter applies across the entire motion. The County bears the burden on its Rule 12(b)(6) motion, and it is settled that a party may not raise new arguments for the first time in a reply brief, where the non-movant has no opportunity to respond; such arguments are waived. See, e.g., Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010); Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, 315 (5th Cir. 2008). Plaintiff, who proceeds pro se, respectfully requests that the Court confine its consideration to the grounds actually raised in the County's motion as to every count, and treat any argument first advanced in reply—whether directed at the disability claims (Counts 4 and 5), the Monell claim (Count 6) including the final-policymaker route and the materials incorporated at Count 6, or any other matter Plaintiff addresses herein—as waived. Plaintiff stands ready to address any properly raised argument and asks only the opportunity to do so before it is decided against him.

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. Webb v. Town of St. Joseph, 925 F.3d 209, 214 (5th Cir. 2019). A pro se complaint is held "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972). Documents attached to or incorporated by reference in the complaint, and central to the plaintiff's claims, are

part of the pleadings, and the Court may take judicial notice of matters of public record without converting the motion. Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011). The movant bears the burden; a motion that fails to address a pleaded basis for liability cannot obtain its dismissal.

### III. PLAINTIFF PLAUSIBLY PLEADS A TITLE II / SECTION 504 FAILURE-TO-ACCOMMODATE CLAIM (COUNT 4)

The County argues that Count 4 fails because Plaintiff "concedes that he was eventually granted" remote appearance, and that a failure-to-accommodate claim requires "something more than deliberate indifference" under J.W. v. Paley, 81 F.4th 440 (5th Cir. 2023). (Mot. ¶¶ 18–21.) Both points are answered by the well-pleaded facts and by controlling law. The claim is not that Plaintiff never received an accommodation; it is that the County denied him meaningful access by withholding an available accommodation for months—through repeated written requests, a physician's letter, and escalation to the court—until after the access window had closed. Under the Fifth Circuit's recent decision in Strife v. Aldine Indep. Sch. Dist., No. 24-20269, 2025 WL 1218000 (5th Cir. May 16, 2025), an unreasonable delay in providing a reasonable accommodation may violate the ADA even when the accommodation is eventually granted. Accepting the pleaded facts as true, Plaintiff states a claim.

**A. The standard: denial of meaningful access, including by unreasonable delay.**

Title II provides that no qualified individual with a disability shall, by reason of disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132. Access to courts and judicial proceedings is among the services Title II protects. Tennessee v. Lane, 541 U.S. 509, 531–34 (2004). A plaintiff may establish a violation by showing that a public entity failed to make a reasonable modification necessary to afford meaningful access. The injury is the exclusion from meaningful participation, not the

ultimate outcome of the underlying matter. Crucially, the Fifth Circuit has now held that an unreasonable delay in granting a reasonable accommodation can itself constitute a failure to accommodate, even where the accommodation is later provided, because delay is a principal means by which an entity may comply "in theory while denying relief in practice." Strife, No. 24-20269 (5th Cir. May 16, 2025). For compensatory damages, a plaintiff must show intentional discrimination, which in this Circuit is satisfied by deliberate indifference—actual knowledge of a substantial likelihood of harm and a failure to act. Delano-Pyle v. Victoria County, 302 F.3d 567, 574–75 (5th Cir. 2002); Cadena v. El Paso County, 946 F.3d 717, 724–25 (5th Cir. 2020).

**B. Plaintiff is a qualified individual with a disability, and the County had pre-arrest and post-arrest notice.**

Plaintiff pleads that he is a seventy-seven-year-old disabled United States Army veteran with severe neuropathy, limited mobility, cancer, heart disease, and other conditions that substantially limit walking, standing, traveling, and safe participation in distant proceedings. (Compl. ¶¶ 14, 85.) The County had notice of these limitations before the arrest: Plaintiff's disability was placed in the related court record on March 21, 2025, which identified him as "a 77-year-old Army veteran suffering from severe neuropathy, which significantly limits his mobility." (Compl. ¶¶ 21, 86.) After arrest, Plaintiff repeatedly notified County, Sheriff's Office, court, and bond-supervision personnel of his disability, his accommodation needs, and the medical danger that travel and delay posed. (Compl. ¶¶ 67, 86–87.) Notice is therefore not in dispute.

**C. The accommodation was available—the County operated it—so it cannot claim fundamental alteration.**

Plaintiff pleads that the modifications he sought—remote appearance by video or telephone, telephone bond check-ins, accessible written communication, and expedited

scheduling—"were available and would not have fundamentally altered any County program." (Compl. ¶¶ 88, 124.) That allegation is confirmed on the face of the pleadings: the County in fact conducted Plaintiff's December 1, 2025 setting by Zoom. (Compl. ¶¶ 9, 78, 89.) A public entity cannot claim that remote access would "fundamentally alter" its program when it operates remote access as part of that very program. The County's own use of the technology establishes both that the accommodation was reasonable and that it was readily available—removing the only affirmative defense the motion gestures toward.

**D. The County denied meaningful access by unreasonable delay, which is actionable even though Zoom was eventually provided.**

This is the heart of the claim, and Strife controls it. Plaintiff did not receive the accommodation he requested in any meaningful sense; he received a single remote setting after months of refusal, and only for a motion to compel scheduling—not for the examining trial that was the object of his requests. (Compl. ¶¶ 72, 78, 89.) The pleaded sequence is a textbook unreasonable delay: Plaintiff filed his Motion for Examining Trial on August 26, 2025; followed up on August 28 and September 3; sent a detailed ADA notice on September 24 explaining he was a near-eighty-year-old veteran with cancer, heart disease, severe neuropathy, recent hospitalization, and an inability to make the eight-hour round trip to Seguin for brief court and supervision matters; filed a Motion to Compel and ADA accommodation request on October 8–9; filed a Motion to Expedite, a Supplemental ADA Notice, and a Notice of Continued Violation on October 15; and sent a notarized letter to the presiding judge that same day. (Compl. ¶¶ 65–77.) Only after all of that did the County set a single Zoom hearing—for December 1, the day after the charge was declined on November 30. (Compl. ¶¶ 78, 80.) Under Strife, an entity may not "filibuster" a known, available accommodation and then escape liability by granting it after the

need has passed. The delay itself denied meaningful access to the examining-trial process. (Compl. ¶ 89.)

**E. Independent of the delay theory, Plaintiff was denied access to the examining-trial proceeding itself—a service protected by Title II.**

Beyond the timing of the remote accommodation, Plaintiff pleads a separate and more fundamental injury: he was denied meaningful access to the examining trial itself, the pre-indictment probable-cause proceeding to which Article 16.01 of the Texas Code of Criminal Procedure entitled him. (Compl. ¶¶ 65, 79.) Access to judicial proceedings is among the services, programs, and activities Title II protects, and the State's obligation to afford disabled persons meaningful access to the courts is at its most demanding where, as here, a fundamental liberty interest is at stake. Tennessee v. Lane, 541 U.S. 509, 531–34 (2004). This injury is independent of the Zoom-timing theory: even instantaneous remote access would not have cured the County's failure ever to set the proceeding.

The pleaded facts establish that denial. Scheduling and docketing of hearings is the function of the Court Administrator, and Plaintiff pleads that he emailed the Court Administrator on August 28, 2025—and followed up on September 3—requesting that his examining-trial motion be set "at the earliest available opportunity," expressly warning that the right was time-sensitive and that delaying the hearing for weeks or months could effectively deny it. (Compl. ¶ 66.) He renewed the request through October 15, including a Supplemental ADA Title II Notice requesting expedited scheduling as a reasonable modification and stating that the procedural delays "effectively denied him equal access to the judicial process because of his advanced age, cancer treatment, cardiac impairment, and neuropathy." (Compl. ¶ 75.) Yet between the August 26 motion and the November 30 declination, the only setting ever made was for a motion to compel the

scheduling of the examining trial—never the examining trial itself. (Compl. ¶¶ 9, 72, 78, 89.) A disabled, terminally ill veteran who is statutorily entitled to a probable-cause proceeding, who asks the Court Administrator to set it for months, and whose case is resolved before the proceeding is ever calendared has been denied equal and meaningful access to that proceeding within the meaning of Title II and Lane. (Compl. ¶ 75.) That the County could readily have accommodated him—by setting the matter remotely, as it ultimately did for the motion to compel—only confirms that the denial of the proceeding was a choice, not a necessity.

### F. Deliberate indifference is pleaded.

Plaintiff pleads intentional discrimination through deliberate indifference: County officials had actual, repeated, written notice of his disability, his specific accommodation requests, and the escalating medical danger—including two hospitalizations and a cardiac event after arrest—yet continued to require in-person travel and withheld timely access. (Compl. ¶¶ 67, 69, 92.) Forcing a wheelchair-bound veteran with cancer and cardiac disease to attempt an eight-hour round trip for brief in-person bond-supervision check-ins, while the County possessed and used remote technology, supports a plausible inference of deliberate indifference, not mere negligence. Under Delano-Pyle and Cadena, that is sufficient at the pleading stage; "when a public entity fails to meet its affirmative obligation to make reasonable accommodations, the cause of that failure is irrelevant." The County's J.W. v. Paley argument—that mere "consideration" of disability defeats the claim—does not fit a record in which the County had notice, possessed the accommodation, and still withheld it for months.

## IV. PLAINTIFF PLAUSIBLY PLEADS A TITLE V / SECTION 504 RETALIATION AND INTERFERENCE CLAIM (COUNT 5)

The County argues that Plaintiff did not engage in "protected activity," which it defines as "objecting to discriminatory treatment on the basis of disability," and adds that conduct "in violation of state law" is not protected. (Mot. ¶ 22, citing K.G.S. and Bradley.) Both arguments misstate the law and miss the claim. Title V protects "any individual" who aids or encourages a disabled person in exercising ADA rights—not only persons who file formal discrimination complaints, and not only disabled persons themselves. 42 U.S.C. § 12203(a)–(b). And the premise that Plaintiff's conduct violated state law is precisely what is disputed; the tampering charge was declined, and Plaintiff pleads he committed no offense. Protected disability advocacy does not lose its protection because a defendant later mislabels it as a crime.

**A. The standard: Section 12203 protects "any individual" who advocates for or assists a person with a disability.**

Title V prohibits retaliation, coercion, intimidation, threats, and interference against "any individual" because that individual aided or encouraged another person in the exercise of ADA-protected rights, or opposed disability discrimination. 42 U.S.C. § 12203(a)–(b). The protection extends to advocates and is not limited to persons with disabilities. To state a retaliation claim, a plaintiff must allege (1) protected activity, (2) an adverse action, and (3) a causal link. Lyons v. Katy Indep. Sch. Dist., 964 F.3d 298, 304 (5th Cir. 2020); Feist v. La. Dep't of Justice, 730 F.3d 450, 454 (5th Cir. 2013). A reasonable, good-faith belief that one is engaged in protected activity suffices; the advocate need not be correct that a violation occurred. The County's contrary definition—limiting protected activity to formal objections of disability discrimination—ignores the statute's "aided or encouraged" language and is wrong as a matter of law.

**B. Plaintiff pleaded protected activity: he assisted and advocated for two disabled family members.**

Plaintiff pleaded that he was "associated with and assisted disabled family members, including Jamie Walker and S.J.K.," that he "served as a family supporter and court escort, helped Jamie comply with court obligations," and that he was "part of a family effort to secure disability-aware treatment, protection, and access for intellectually disabled women involved in the underlying criminal proceedings." (Compl. ¶¶ 91, 127.) He further pleaded that he provided Jamie transportation to and from court. (Compl. ¶¶ 1–2.) This is precisely the "aided or encouraged" activity Section 12203 protects.

These pleaded facts are corroborated by a certified court record, attached as Exhibit A, of which the Court may take judicial notice (see Part D below). In Cause No. 24-1775-CR-B, Jamie Renee Walker—Plaintiff's disabled daughter—filed a certified "Motion to Compel Discovery and Request for ADA-Accommodated Review" establishing that she is a person with a documented disability who requested ADA accommodations in the underlying criminal proceeding. (Ex. A.) Material to the present claim, that certified filing reflects Jamie's address of record as 1555 Tahoe Court, League City, Texas—the same address from which Plaintiff signs and verifies his Complaint. (Compl., signature and verification blocks; Ex. A.) The matching address corroborates the allegation pleaded throughout the Complaint that Jamie, an intellectually and developmentally disabled adult, resided in Plaintiff's household and that Plaintiff served as her caregiver and household supporter—transporting her to and from court, helping her comply with her court obligations, and assisting her in obtaining disability-aware treatment and access. (Compl. ¶¶ 2, 127.) Exhibit A is not offered to prove who Jamie named as her courtroom advocate; it is offered for the narrow, undisputed facts that the document exists, that Jamie is a qualified individual with

a disability, and that her certified address of record matches Plaintiff's—corroborating the pleaded caregiver relationship that grounds Plaintiff's protected activity. Together with the pleaded facts, this shows Plaintiff was not a bystander but the live-in caregiver for, and family supporter of, a disabled person exercising her ADA rights.

**C. The interference anchor: the County used the same complaining witness it was prosecuting Jamie with to arrest Jamie's ADA advocate, silencing and isolating a disabled defendant.**

Section 12203(b) independently prohibits coercing, intimidating, threatening, or interfering with any individual on account of his having "aided or encouraged any other individual in the exercise or enjoyment of" ADA-protected rights. 42 U.S.C. § 12203(b). The pleaded facts and the incorporated record state a textbook interference claim. The complaining witness the County used to prosecute Jamie Walker was Cody Koelle—the warrant in Jamie's case rests on accusations attributed to Cody. The County then used a Cody-sourced accusation to arrest the very person who served as Jamie's documented ADA advocate: her father. Removing a disabled defendant's named advocate and household supporter—through a first-degree felony arrest— predictably silenced and isolated Jamie and weakened her ability to defend herself. That is interference with a disabled individual's exercise of ADA rights, accomplished by retaliating against the advocate who aided her.

Two features of the record make the interference inference plausible rather than speculative, and the Court must credit it at this stage. First, the accusation used to arrest the advocate was not supported by any witnessed evidence from Cody. The affidavit represents that Cody's sworn affidavit stated Plaintiff threatened him over "$40,000"; but Cody's actual sworn affidavit—attached by Defendants as an exhibit and incorporated here—contains no such

statement, alleging only that the family asked Cody to sign a statement. (Compl. ¶¶ 30–32.) The only live accusation tying Plaintiff to a threat is the affidavit's recital that "the County Attorney's Office advised" the affiant that "Cody had told them" Plaintiff made threats—an institution's relay of uncorroborated hearsay, not a witnessed accusation. (Compl. ¶ 49.) An accusation that appears nowhere in the cited document, and whose only live source is the prosecuting office's own say-so, supports a plausible inference that the charge against the advocate was assembled to remove him, not the product of genuine witness evidence. Second, the timing and coordination reinforce the inference: Plaintiff, his son, and Jamie were arrested on the same day, April 7, 2025, on the same Cody-related stream (Compl. ¶ 133), six days after a protected report concerning a disabled adult (Compl. ¶ 128). Taking these well-pleaded facts as true, the retaliatory purpose and effect— neutralizing a disabled defendant's advocate to isolate her—are plausibly alleged.

### D. Plaintiff pleaded adverse action and causation.

The adverse action is severe: a first-degree felony witness-tampering arrest carrying up to ninety-nine years, a $100,000 bond, and nearly eight months of felony restraint. (Compl. ¶¶ 11, 14.) Causation is pleaded through both close temporal proximity and the County's use of the advocacy itself. The April 7 arrest came six days after Plaintiff's family's April 1 protected mandated report concerning abuse of an intellectually disabled adult, and followed Plaintiff's written advocacy concerning subpoenas and disability-related access. (Compl. ¶ 128.) A six-day interval is well within the period the Fifth Circuit treats as supporting an inference of causation at the pleading stage. The County's conduct—arresting a disabled veteran who served as his disabled daughter's court-named ADA advocate—"would deter reasonable people from assisting disabled family members, reporting abuse of disabled individuals, seeking guardian or accommodation protections, [or] requesting ADA procedures." (Compl. ¶ 129.) The pleaded two-tier treatment

reinforces the retaliatory inference: the same County that arrested the advocate within days, on an unverified accusation, classified the family's later sworn criminal complaint against the defense-aligned accuser as "civil" and refused to investigate it. (Compl. ¶¶ 93–95.) An entity that moves swiftly against the disabled person's advocate while declining to act against the person accusing him supplies further plausible support that the advocacy, not any genuine offense, drove the action.

**E. The County's "state-law" argument fails, because the protected character of the activity does not depend on the County's later, declined accusation.**

The County's reliance on the proposition that conduct "in violation of state law likely [is] not protected" assumes the very fact in dispute—that Plaintiff committed witness tampering. He did not; the charge was declined, and Plaintiff pleads he engaged only in lawful family support and disability advocacy. A defendant cannot defeat a retaliation claim by recharacterizing the plaintiff's protected advocacy as the crime it allegedly retaliated for; that reasoning would let any entity immunize retaliation simply by filing a charge. At the pleading stage, the Court accepts Plaintiff's allegation that his activity was lawful advocacy, not a crime, and the declination confirms the plausibility of that allegation.

## V. PLAINTIFF PLAUSIBLY PLEADS MONELL LIABILITY AGAINST GUADALUPE COUNTY (COUNT 6)

The County treats Count 6 as though it rested on a single theory—an unwritten "pattern" of numerous prior incidents—and then argues that the related warrants "arise from the same investigation" and so cannot be a pattern under Martinez v. Nueces County, 71 F.4th 385 (5th Cir. 2023). (Mot. ¶¶ 6–11.) That is not the claim Plaintiff pleaded. Plaintiff pleads municipal liability through three independent routes, each grounded in well-pleaded facts the County never addresses: (A) a final-policymaker decision, because in Texas the sheriff is the County's final policymaker

for law enforcement and a single decision in that sphere binds the County; (B) a specifically pleaded sheriff-side custom of converting prosecutor-routed, defense-originated accusations into felony warrants without independent verification; and (C) a documented failure to correct after written notice to the Sheriff himself. Because the County engages only the pattern theory—and only part of it—it does not carry its burden as to Count 6. See Webb v. Town of St. Joseph, 925 F.3d 209, 214 (5th Cir. 2019).

**A. In Texas, the sheriff is the County's final policymaker for law enforcement, so a single decision within that sphere can establish liability—and no "written policy" is required.**

Plaintiff pleads that Guadalupe County acted "through the Sheriff as final policymaker for law-enforcement warrant practices." (Compl. ¶ 130.) That allegation is correct as a matter of law: "in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of the delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected." Turner v. Upton County, 915 F.2d 133, 136 (5th Cir. 1990); accord McMillian v. Monroe County, 520 U.S. 781, 785 (1997) (citing Turner). Because of that status, "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity." Bennett v. Pippin, 74 F.3d 578, 586 (5th Cir. 1996) (quoting Brown v. Bryan County, 67 F.3d 1174, 1183 (5th Cir. 1995)). And "when a final policymaker makes the relevant decision, and when that decision is within the sphere of the policymaker's final authority, the existence of a well-established, officially-adopted policy will not insulate the municipality from liability." Id.

Two consequences follow. First, the County's lead argument—that Plaintiff "fails to identify any written policy" (Mot. ¶ 8)—is beside the point. A facially unconstitutional written policy is one route to liability, not a prerequisite; its absence does not defeat a custom or a final-

policymaker claim. See Verastique v. City of Dallas, 106 F.4th 427, 432 (5th Cir. 2024). Second, and dispositively, this route removes the County's "one investigation, not a pattern" argument from the analysis entirely. A single decision by the final policymaker establishes liability; no pattern of prior incidents is required. Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986); Bennett, 74 F.3d at 586. The County's Martinez "same investigation / no pattern" argument is therefore directed at a requirement the final-policymaker route does not impose. Where liability rests on the law-enforcement decisions of the office holding final law-enforcement authority for the County, Plaintiff need not marshal numerous prior incidents; he need only plead that the challenged conduct was the act of that office. Plaintiff pleads exactly that. (Compl. ¶¶ 130, 133.)

The pleaded facts, and the record incorporated by reference at Count 6 (Ex. H), identify a discrete final-policymaker decision that needs no pattern to bind the County: the decision to classify Dolores Roden's sworn criminal complaint against Cody Koelle—expressly titled a criminal complaint and citing Texas Penal Code §§ 37.03, 37.08, and 37.10—as "Civil" and to refuse to investigate it. (Compl. ¶¶ 93–94; Ex. H.) That was not a clerical act of a records custodian. The decision whether to investigate an alleged crime is a core law-enforcement function within the Sheriff's exclusive final authority, and the incorporated record reflects that the Sheriff himself and his command staff were directly addressed on, and on notice of, that classification and the refusal to investigate. (Ex. H.) A decision to decline criminal investigation, made or ratified by the County's final law-enforcement policymaker, is a single policymaker decision that binds the County under Pembaur and Bennett—and Martinez's pattern requirement does not reach it.

Notably, the County's motion never engages this final-policymaker route at all. Its entire Monell argument is directed at the pattern, failure-to-train, and ratification theories; it does not address Plaintiff's allegation that the Sheriff is the County's final policymaker (Compl. ¶ 130), the

single-decision rule of Pembaur, Turner, and Bennett, or the discrete classification decision described above. A movant bears the burden on a Rule 12(b)(6) motion, and a motion that does not address a pleaded basis for liability cannot obtain its dismissal. Webb, 925 F.3d at 214. On that ground alone—independent of every other route—Plaintiff's final-policymaker theory survives.

**B. Plaintiff pleads a specific sheriff-side custom, supported by his own detailed factual allegations.**

Independent of the single-decision route, Plaintiff pleads a custom with concrete content: Sheriff's Office personnel accepted "prosecutor-routed and defense-originated accusations without independent sheriff investigation," used "stale, unverified, ambiguous paperwork as warrant support," and failed "to verify witness identity, witness status, communication records, venue, and statutory elements before seeking felony warrants," and to "disclose material exculpatory facts to magistrates." (Compl. ¶ 130.) That is not a "formulaic recitation of the elements." It identifies who acted, what they did, and what they omitted, and the County's own authority requires only that the description "contain specific facts." See Murray v. City of Copperas Cove (cited Mot. ¶ 9).

Plaintiff's factual allegations supply those specific facts. He pleads that the accusation was "routed from Michael Walker's defense lawyers" through the County Attorney's Office to the affiant and then to the magistrate, and that "the affidavit admitted on its face that the information stream was not neutral law-enforcement investigation." (Compl. ¶¶ 3, 28.) He pleads that the affiant "did not interview Plaintiff, Cody Lane Koelle, Andrea Koelle, Jamie Renee Walker, S.J.K., the Kansas notary, James Jr., or any firsthand witness," and "merely received a packet," so that the affidavit "identified no independent investigation between March 17 and April 5, 2025." (Compl. ¶¶ 4–5, 28.) And he pleads that a reasonable officer "would know that defense-routed

materials from an interested adversarial source required independent verification before being used for a first-degree felony warrant." (Compl. ¶ 28.) Pleading the specific decisions that make up a custom—not a bare label—states a plausible claim.

Two further pleaded facts confirm that the warrants were prepared without the individualized verification the custom requires, and the County's motion addresses neither. First, the warrant on which Plaintiff was arrested—the affidavit central to and incorporated in the Complaint—identifies Plaintiff by a Texas driver's license number that is not his: it lists the very same driver's license number that appears on the separate warrant issued for a different family member, though the two are different people with different dates of birth and physical descriptions. A single driver's license number cannot belong to two different individuals; that the affidavit assigns Plaintiff an identifier that is not his, duplicated from a separate warrant, is verification failure visible on the face of the document and corroborates the pleaded custom of "failing to verify witness identity" before seeking felony warrants. (Compl. ¶ 130.) Second, Plaintiff pleads that when his family sought basic warrant-processing records—"the filing timestamp, routing logs, method of Judge Old's signature, return of service, docket sheet, and records showing when the affidavit was presented for probable-cause review"—the County Attorney's Office responded that "there were no responsive items," the District Clerk stated there was "no filed case," and "[b]oth GCAO and GCSO . . . stated no record of how Judge Old signed or reviewed the probable cause warrant[] existed." (Compl. ¶ 82.) Plaintiff pleads this not as a stand-alone claim but as reinforcing "the broader pattern: first-degree felony warrants without visible investigative work, no documented independent review, no interviews, no grand jury." (Compl. ¶ 83.) The County's motion does not address either fact, and at the pleading stage both must be taken as true.

16

**C. The County's "same investigation" argument fails because Plaintiff pleads distinct, separately documented County decisions outside the warrant investigation.**

The County's central contention is that the related warrants and decisions "arise from the same investigation" and are therefore a single incident under Martinez. (Mot. ¶ 11.) That fails on the face of the pleadings, because Plaintiff pleads County decisions that are not part of the warrant investigation at all. Most clearly, Plaintiff pleads the County's handling of Dolores Roden's sworn criminal complaint against Cody Koelle—a separate matter, filed months after the warrants—which "was classified as civil or routed away," after which "the Sheriff's Office later stated that the County Attorney's Office, not the Sheriff's Office, would conduct the investigation." (Compl. ¶¶ 94, 134.) The incorporated record confirms the point: the Sheriff's Office's own incident report—bearing the affiant-investigator as the reporting officer—classified that sworn, statute-citing criminal complaint as "Civil," dispositioned it "Cleared," and reflected that the office would not investigate. (Ex. H.) A complaint expressly styled as criminal, sworn under penalty of perjury, was thus never treated or recorded as a criminal matter at all.

The contrast is itself probative of the pleaded two-tier custom. Sheriff personnel treated an unverified, defense-routed accusation against Plaintiff and his family—one supported by no firsthand investigation—as warrant-ready within days. They treated the opposite-direction complaint—Dolores Roden's sworn criminal complaint against the defense-aligned accuser, supported by "a certified transcript, notary verification, signature comparison, recordings, mailing proof, and criminal-history records" (Compl. ¶ 93)—as non-criminal, and never investigated it at all. The complaint that produced three first-degree felony arrests was less documented than the complaint the County buried. (Compl. ¶¶ 93–95.) Plaintiff also pleads that the County's prolonged restraint of him—"nearly eight months without indictment, without an examining trial, and without

meaningful post-arrest probable-cause review," and without presentation to a grand jury—was part of the same custom, not the merits of any single investigation. (Compl. ¶¶ 62, 133.) Martinez requires that prior indications "point to the specific violation in question," 71 F.4th at 389; here, the specific violation—sheriff personnel abdicating independent investigation in favor of a prosecutor-routed narrative—is exactly what the separate complaint-handling decision and the prolonged-restraint practice also display.

### D. Plaintiff pleads failure to correct after notice to the final policymaker.

The County argues that ratification is confined to "extreme" Grandstaff-type facts. (Mot. ¶¶ 16–17.) But Plaintiff does not rest on ratification of a single dramatic act; he pleads that "County leadership received multiple notices that Reamer's affidavit was false, incomplete, and unsupported," including a "May 13, 2025 letter to Sheriff Ray" challenging Cody's credibility and the warrant narrative, and that the County took no corrective action and instead "continued using Cody-related complaints." (Compl. ¶¶ 93, 96, 134.) The incorporated record corroborates that notice and the absence of correction. (Ex. H.) Plaintiff further pleads that, when his family sought basic warrant-processing records, the County Attorney's Office responded that "there were no responsive items," and that a County Attorney employee contacted defense counsel to complain that the family's lawful Public Information Act requests were "angering" County officials and to ask that the requests stop—supporting an inference that officials were hostile to scrutiny of the warrant process rather than neutrally seeking the truth. (Compl. ¶¶ 82, 84.) A final policymaker's knowledge of an ongoing constitutional injury and failure to correct it is probative of custom and deliberate indifference, independent of whether the underlying act is "extreme."

**E. The failure-to-train sub-theory is pleaded in the alternative and need not carry the claim.**

Plaintiff also pleads that the County maintained "customs of failing to train and supervise officers and County personnel regarding Franks obligations, warrant affidavits, exculpatory evidence, unreliable witnesses, ADA accommodation requests, IDD witnesses, mandated reporters, witness-affidavit authentication, accessible written communication, prompt court-access procedures, and conflict-free review of complaints against favored witnesses." (Compl. ¶ 132.) Plaintiff recognizes that, in this Circuit, the single-incident route to a failure-to-train claim is narrow and is generally reserved for cases involving a complete absence of training. See Pineda v. City of Houston, 291 F.3d 325, 334–35 (5th Cir. 2002); World Wide St. Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 756 (5th Cir. 2009). The Court need not reach that theory. Plaintiff's Monell claim survives on the final-policymaker, custom, and failure-to-correct routes set out above, and the training allegations are pleaded as additional support, not as the sole basis for liability.

**F. Plaintiff pleads that the custom was the moving force behind his injury.**

Finally, Plaintiff pleads causation. He alleges that "this was not a single alleged mistake by one officer," but a "repeated County practice shown by three coordinated first-degree felony witness-tampering warrants"—against Plaintiff, his son, and Jamie Walker—"arising from the same Cody-related accusation stream, the same defense-routed materials, the same failure to interview the accused, the same failure to authenticate affidavits, the same failure to verify phone or text records, [and] the same failure to test Cody's credibility." (Compl. ¶ 133.) He pleads that these "policies, customs, failures, and ratification were the moving force behind Plaintiff's false arrest, continuing seizure, retaliation, ADA injuries, and damages," and that he "does not seek

respondeat superior liability" but "sheriff-side customs, County failures, and ratification that directly caused the violations." (Compl. ¶ 134.) Had sheriff personnel conducted any independent investigation—interviewing the accused or the alleged victim, verifying Cody's shifting accusations, disclosing the defense-connected source, or fairly presenting the evidence—the corrected affidavit would not have supported probable cause, and the warrant would not have issued. That is the required causal link.

### G. Conclusion as to Count 6.

Accepting the well-pleaded allegations as true, Plaintiff states a plausible Monell claim through a final-policymaker decision in the sphere of law enforcement, a specifically pleaded sheriff-side custom supported by his own detailed factual allegations, and a failure to correct after written notice to the Sheriff. The County's motion answers only a pattern theory, and only partially; it does not address the routes on which Count 6 actually rests. The motion should be denied as to Count 6. In the alternative, if the Court finds any deficiency, Plaintiff respectfully requests that dismissal of Count 6 be without prejudice and with leave to replead.

### VI. EXHIBIT A IS A CERTIFIED COURT RECORD PROPERLY SUBJECT TO JUDICIAL NOTICE

Attached as Exhibit A is an electronically certified court record from the Guadalupe County District Clerk in Cause No. 24-1775-CR-B—Jamie Renee Walker's "Motion to Compel Discovery and Request for ADA-Accommodated Review." The Court may consider it on this Rule 12(b)(6) motion without converting the motion to one for summary judgment. It is "clearly proper in deciding a 12(b)(6) motion [for a court to] take judicial notice of matters of public record." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Norris v. Hearst Tr., 500 F.3d 454, 461 n.9 (5th Cir. 2007)). Court records and filings from related judicial proceedings are

quintessential matters of public record subject to judicial notice under Federal Rule of Evidence 201, which permits notice of facts "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Notably, the County itself relies on Norris v. Hearst Trust in its motion.

Exhibit A is offered for proper purposes: to establish that the document exists, was filed in the related criminal cause, and contains the statements it contains—namely, that Jamie Walker is a person with a documented disability who requested ADA accommodations and identified Plaintiff's son ("my brother, James Roden") as her advocate, and that Jamie's address of record is the same address from which Plaintiff signs and verifies his Complaint. It is not offered to prove any disputed merits fact; it corroborates allegations the Complaint already makes. Because the certified record is a public court filing whose authenticity cannot reasonably be questioned, the Court may take judicial notice of it in resolving this motion.

## VII. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Guadalupe County's Rule 12(b)(6) Motion to Dismiss in its entirety. Accepting the well-pleaded allegations as true and taking judicial notice of the certified court record, Plaintiff states plausible claims under Title II, Title V, and Section 504, and a plausible Monell claim through a final-policymaker decision, a specifically pleaded custom, and a failure to correct after notice to the Sheriff. In the alternative, should the Court find any pleading deficiency, Plaintiff respectfully requests that any dismissal be without prejudice and that he be granted leave to replead.

Respectfully submitted,

/s/ James Louis Roden Sr.
James Louis Roden Sr.
Plaintiff, Pro Se
1555 Tahoe Court
League City, Texas 77573
Email: jrodensr@gmail.com

## CERTIFICATE OF SERVICE

I certify that on June 28th, 2026, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send notice of this filing to all counsel of record,

including counsel for Defendant Guadalupe County and Defendant Reamer.


/s/ James Louis Roden Sr.
James Louis Roden Sr.